UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUMBERTO GOMEZ DE LA TORRE,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 2:17-cv-651-KJN<br><br><br><br>ORDER |

Plaintiff Humberto Gomez De La Torre seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("Act").[1] Plaintiff filed a motion for summary judgment, which the Commissioner opposed by filing a cross-motion for summary judgment. (ECF Nos. 13, 20.) Subsequently, plaintiff also filed a reply brief. (ECF No. 23.) For the reasons discussed below, the court GRANTS IN PART plaintiff's motion for summary judgment, DENIES the Commissioner's cross-motion for summary judgment, and REMANDS the action for further

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes. (ECF Nos. 6, 11.)

1

administrative proceedings consistent with this order.

I. BACKGROUND

Plaintiff was born on May 9, 1964; has a limited education; can communicate in English; and previously worked as a day laborer and cemetery worker. (Administrative Transcript ("AT") 28.)[2] On January 27, 2014, plaintiff applied for DIB and SSI, claiming that he was disabled beginning April 11, 2012, due to back impairments. (AT 21, 247.) After plaintiff's application was denied initially and on reconsideration, an ALJ conducted a hearing on July 12, 2016, at which plaintiff, represented by counsel, and a vocational expert ("VE") testified. (AT 21, 36-57.) The ALJ subsequently issued a decision dated September 2, 2016, determining that plaintiff had not been under a disability, as defined in the Act, from April 11, 2012, plaintiff's alleged disability onset date, through the date of the ALJ's decision. (AT 21-30.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on January 27, 2017. (AT 1-3.) Plaintiff subsequently filed this action on March 28, 2017, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

II. ISSUES PRESENTED

On appeal, plaintiff raises the following issues: (1) whether the ALJ erroneously discounted the opinion of plaintiff's treating psychiatrist; and (2) whether the ALJ failed to properly assess plaintiff's social functioning limitations.

III. LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV. DISCUSSION

Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB and SSI pursuant to the Commissioner's standard five-step analytical framework.[3] As an initial matter, the ALJ noted that plaintiff met the

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

| 1 | insured status requirements of the Act for purposes of DIB through March 31, 2017. (AT 24.) At
| 2 | the first step, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since
| 3 | April 11, 2012, plaintiff's alleged disability onset date. (Id.) At step two, the ALJ found that
| 4 | plaintiff had the following severe impairments: cognitive disorder, psychotic disorder, and spinal
| 5 | disorder. (Id.) However, at step three, the ALJ determined that plaintiff did not have an
| 6 | impairment or combination of impairments that met or medically equaled the severity of an
| 7 | impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.)

Before proceeding to step four, the ALJ assessed plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a wide range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant is limited to lifting-carrying 50 pounds occasionally and 25 pounds frequently; is limited to sitting six hours and standing-walking six hours in an eight-hour workday; and is limited to simple routine tasks.

(AT 26.) At step four, the ALJ determined that plaintiff was unable to perform any past relevant work. (AT 28.) Nevertheless, at step five, the ALJ found that, in light of plaintiff's age, education, work experience, RFC, and the VE's testimony, there were other jobs that exist in significant numbers in the national economy that plaintiff could perform. (AT 28-29.)

Consequently, the ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from April 11, 2012, plaintiff's alleged disability onset date, through September 2, 2016, the date of the ALJ's decision. (AT 29-30.)

<u>Plaintiff's Substantive Challenges to the Commissioner's Determinations</u>

*Whether the ALJ erroneously discounted the opinion of plaintiff's treating psychiatrist*

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. Holohan, 246 F.3d at 1202.

4

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 830-31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[4] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

In this case, on September 11, 2014, plaintiff's treating psychiatrist, Dr. Walter Lampa, completed a mental assessment form, which diagnosed plaintiff with psychotic disorder not otherwise specified with delusions and memory deficits. (AT 465-69.) Dr. Lampa indicated that he had been treating plaintiff since July 18, 2014 with antipsychotic medications, but that plaintiff continued to have paranoid delusions and memory defects. (AT 465.) He assessed plaintiff with poor to no ability in all mental functioning domains. (AT 466-68.) The ALJ gave reduced weight to Dr. Lampa's opinion, finding that it was "not consistent with the claimant's activities. For example, the claimant reported being able to walk two to three hours per day. He also testified that he is able to wash dishes and use the microwave." (AT 28.)

---

[4] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

5

The ALJ plainly did not provide specific and legitimate reasons for discounting Dr. Lampa's opinion. It is unclear how plaintiff's ability to walk 2-3 hours per day, wash dishes, and use the microwave has any bearing on the social and concentration limitations assessed by Dr. Lampa with respect to plaintiff's psychotic disorder. To be sure, Dr. Lampa's severe opinion itself is very brief and somewhat conclusory, and in the absence of other evidence, the ALJ would have been entitled to give it little weight. However, in this case, the medical records document some potentially concerning mental health symptoms and behaviors. (See, e.g., AT 425 [December 9, 2013 note from primary care provider stating that plaintiff heard voices, saw people entering the house, and accused his wife of being with other men], AT 429 [January 6, 2014 note from primary care provider stating that plaintiff heard voices telling him that his wife had an affair and punched her in the face], AT 433 [January 22, 2014 note from primary care provider stating that plaintiff paced the house for most of the night thinking there were strangers present], AT 437 [March 19, 2014 note from primary care provider stating that plaintiff left the home and wandered the streets], AT 445 [June 10, 2014 note from primary care provider stating that plaintiff "presents accompanied by his mother and wife[;] they are very concerned about him because he walked out of his home and went to live with his mother and now his mother is worried because he acts strange and tells her stories that make no sense"], AT 456 [July 18, 2014 note from Dr. Lampa stating that plaintiff ripped his wife's purses and put all of his clothes in a garbage bin, plaintiff believed that his wife was sleeping with her brother, and plaintiff felt like he was being followed], AT 460 [August 1, 2014 note from Dr. Lampa stating that plaintiff was verbally aggressive toward his wife and family].)

Therefore, the court remands the action for further administrative proceedings, which shall include a consultative examination of plaintiff by an appropriate mental health specialist who is given access to all of plaintiff's prior medical/mental health records. Additionally, especially because Dr. Lampa's last treatment note in the record dated September 11, 2014, appears to document significant improvement (AT 463-64), the ALJ shall also obtain updated records from Dr. Lampa and any other medical/mental health providers. The ALJ is also free to develop the record in any other respects deemed appropriate. Thereafter, the ALJ shall reconsider Dr.

Lampa's opinion along with all the other opinions in the record, based on the complete supplemented record.  Importantly, the court does not instruct the ALJ to credit Dr. Lampa's opinion, or any other particular opinion or evidence, on remand.  Indeed, the court expresses no opinion regarding how the evidence should ultimately be weighed, and any ambiguities or inconsistencies resolved, provided that the ALJ's decision is based on proper legal standards and supported by substantial evidence in the record as a whole.

*Whether the ALJ failed to properly assess plaintiff's social functioning limitations*

Because the ALJ will have an opportunity on remand to reassess plaintiff's social functioning limitations, if any, on a supplemented record, the court declines to reach the issue at this juncture.

V. CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 13) is GRANTED IN PART.
2. The Commissioner's cross-motion for summary judgment (ECF No. 20) is DENIED.
3. The final decision of the Commissioner is REVERSED, and the case is REMANDED for further administrative proceedings consistent with this order pursuant to sentence four of 42 U.S.C. § 405(g).
4. The Clerk of Court shall close this case.

Dated:  July 16, 2018

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE